UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL H.,

                Plaintiff,                    **DECISION AND ORDER**

    v.

                                                 1:23-CV-00550 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

# **INTRODUCTION**

Represented by counsel, Plaintiff Michael H. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 4; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 4) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on June 14, 2020. (Dkt. 3 at 26, 61).[1] In his application, Plaintiff alleged disability beginning March 10, 2020, due to COPD, emphysema, and being borderline diabetic. (*Id.* at 62-63). Plaintiff's application was initially denied on April 12, 2021. (*Id.* at 26, 104-17). A telephone hearing was held before administrative law judge ("ALJ") Timothy Belford on December 16, 2021. (*Id.* at 26, 41-60). On March 10, 2022, the ALJ issued an unfavorable decision. (*Id.* at 23-36). Plaintiff requested Appeals Council review; his request was denied on April 20, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2025. (Dkt. 3 at 28). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 10, 2020, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of chronic obstructive pulmonary disease (COPD) and asthma. (*Id.* at 29). The ALJ further found that Plaintiff's medically determinable impairments of diabetes mellitus (DM), obesity, hypertension, obstructive sleep apnea (OSA), thyroid disorder (hypothyroidism), liver disorder, hyperlipidemia, and cannabis use disorder were non-severe. (*Id*. at 29-30).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 30). The ALJ particularly considered the criteria of Listings 3.02 and 3.03 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p. (*Id*. at 29, 31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> he can no more than occasionally climb ramps, stairs, and ladders. He can no more than occasionally crawl, kneel, and crouch. He can no more than frequently handle and finger. He is limited to no more than occasional exposure to work environments with temperature extremes and pulmonary irritants, such as fumes, dusts, and gases.

(*Id.* at 31). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 34).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of router, office helper, and cashier II.

(*Id.* at 35-36). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 36).

## II.  The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ erred by failing to evaluate Plaintiff's need for supplemental oxygen. (Dkt. 4-1 at 1, 6-9). Specifically, Plaintiff contends that although he had difficulty standing and walking due to shortness of breath, and that he used oxygen at night and at times during the day, the ALJ did not evaluate the functional effect of Plaintiff's need for supplemental oxygen on his ability to perform light work. (*Id*. at 6-7). In response, the Commissioner argues that the ALJ properly considered Plaintiff's need for supplemental oxygen, and the record supports that Plaintiff's use of supplemental oxygen was intermittent, at best. (Dkt. 7-1 at 7-9). The Court has considered Plaintiff's argument and, for the reasons discussed below, finds it to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855

F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)). In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Contrary to Plaintiff's argument, the written determination makes clear that the ALJ considered Plaintiff's reports of breathing issues and his use of supplemental oxygen. For example, the ALJ discussed Plaintiff's hearing testimony, including that "he uses oxygen at night most nights, but not all, and that seemed to help." (Dkt. 3 at 30; *see also id*. at 32 ("He testified he uses oxygen most nights to sleep. However, he does not have restful sleep and experience[s] daytime sleepiness.")). The ALJ further discussed Plaintiff's reports that since his alleged onset date, "he could no longer breathe well," that he believes his hands go numb due to his lack of oxygen, and also that he "cannot do very much at all without losing his breath." (*Id*. at 32). Accordingly, it is apparent to the Court that the ALJ considered Plaintiff's reports regarding his use of oxygen in connection with his breathing issues and, given that the ALJ was present at the hearing, plainly he was aware of Plaintiff's

testimony that he has used oxygen during the summertime.  (*See id*. at 53 (Plaintiff's hearing testimony that he used oxygen "most nights," and in response to counsel's questioning, that he has used oxygen during the day in the summertime)).

While the ALJ did not engage in a lengthy discussion concerning Plaintiff's reports about his use of supplemental oxygen, the ALJ is not required to discuss every shred of medical evidence in the record.  *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered (quotations and citations omitted)).  Here, aside from Plaintiff's hearing testimony, the record supports that Plaintiff used supplemental oxygen on an intermittent basis.  (*See, e.g.*, Dkt. 3 at 420-23 (October 7, 2021 report by Vandana Pai, M.D., of General Physician PC, Pulmonary, noting that Plaintiff "has been using supplemental oxygen via nasal cannula intermittently and feels he sleeps better with oxygen on."); *id*. at 430-33 (January 6, 2022 report by Dr. Pai, again noting that Plaintiff uses supplemental oxygen intermittently and sleeps better with the oxygen on)).  Accordingly, the Court finds that the ALJ's discussion of Plaintiff's testimony that he uses supplemental oxygen—including by acknowledging Plaintiff's reports of using oxygen and the medical evidence concerning his breathing issues—to be sufficient.  The fact that the ALJ did not engage in a lengthy discussion about this topic does not, standing alone, require remand.

To account for Plaintiff's symptoms relating to his breathing issues, the ALJ assessed an RFC requiring no more than occasional exposure to work environments with temperature extremes and pulmonary irritants, such as fumes, dusts, and gases.  (*Id*. at 31).

Notably, these limitations are supported by other medical evidence in the record, including the opinion offered by the consultative examiner, Hongbiao Liu, M.D. (*Id*. at 404-07). Dr. Liu examined Plaintiff on April 5, 2021, and concluded that Plaintiff "should avoid dust and other irritating factors due to COPD/emphysema condition." (*Id*. at 407). Dr. Liu observed that Plaintiff was in no acute distress, had a normal gait, could walk on his heels and toes without difficulty, used no assistive devices, needed no assistance changing for the exam or getting on and off the examination table, and was able to rise from the chair without difficulty. (*Id*. at 405). Dr. Liu noted that Plaintiff's chest and lungs were clear to auscultation, and that he had no significant chest wall abnormality and normal diaphragmatic motion. (*Id*. at 406). Plaintiff's ventilation test revealed no more than a moderate obstruction. (*Id*.). Plaintiff's prognosis was stable. (*Id*. at 407).

The ALJ also discussed Plaintiff's medical records as they pertained to his ability to breathe. (*See id*. at 31 (discussing January 2022 pulmonary function test, which demonstrated normal lung capacity, mild reduction in diffusion capacity, and that at the time of testing, Plaintiff denied hospitalization for respiratory problems); *id*. at 33 (discussing physical examination/health assessment in July 2020, where Plaintiff appeared healthy, alert, oriented, and walked with a normal gait, and his respirations were unlabored and lungs were clear bilaterally); *id*. (discussing primary care treatment note from September 2021, where Plaintiff reported he could not breathe and could not afford medication, but examination included "healthy appearing, unlabored breathing, normal respiration rate, good airflow, and clear lungs")). The ALJ further noted that in March 2021, Plaintiff reported exercising occasionally. (*See id*. at 33; *see also id*. at 357

(treatment note from July 2020, noting that Plaintiff swims for exercise, and he lost 38 pounds in less than one year)). Ultimately, the ALJ concluded that while the treatment notes supported that Plaintiff has a respiratory impairment, the objective testimony and physical examination findings were not consistent with Plaintiff's alleged limitations. (*Id*. at 32).

Plaintiff appears to take the position that there is a blanket rule that the failure to discuss the use of oxygen requires reversal. (*See* Dkt. 4-1 at 7 (acknowledging while an ALJ is not required to reconcile every shred of evidence, crucial factors must be set forth with sufficient specificity, and "[t]he need for supplemental oxygen could be considered such a factor")). In support of this assertion, Plaintiff cites to out-of-circuit cases discussing that the use of supplemental oxygen can impact the ability to work. (*See id*.). However, Plaintiff does not cite to any federal cases from New York or from within the Second Circuit, and the Court has identified no controlling authority stating that the ALJ is required, in every instance, to make specific findings regarding a plaintiff's use of oxygen. As explained above, the ALJ acknowledged Plaintiff's testimony relating to his use of supplemental oxygen, and the Court does not find that the lack of further discussion on this point renders the decision not supported by substantial evidence.

Further, Plaintiff has failed to carry his burden of demonstrating that additional restrictions beyond those already included in the RFC are necessary. *See, e.g., Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (explaining that the plaintiff "had a duty to prove a more restrictive RFC, and failed to do so"). Other than his own subjective statements, Plaintiff has failed to point to any evidence, such as an opinion from a medical

provider, supporting that he required supplemental oxygen on a daily basis or that he required it to engage in work activities. As explained above, the ALJ discussed Plaintiff's limitations with respect to his breathing and fashioned an RFC to accommodate those limitations, and that RFC is supported by substantial evidence in the record. Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 3, 2024
       Rochester, New York